STATE of Iowa, Appellee,

v.

Dennis Lee McKEE, Appellant.

No. 65498.

Supreme Court of Iowa.

Nov. 25, 1981.

Rehearing Denied Dec. 18, 1981.

Jon M. Kinnamon of Kinnamon, Kinnamon, Russo & Meyer, and William L. Thomas of Crawford, Sullivan & Read, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and Denver D. Dillard, Asst. Linn County Atty., for appellee.

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, ALLBEE, and LARSON, JJ.

McCORMICK, Justice.

Defendant Dennis Lee McKee appeals from his conviction and sentence for sexual abuse in the first degree in violation of sections 709.1 and 709.2, The Code. He challenges trial court rulings on a motion to suppress evidence of inculpatory statements, evidentiary objections, and an objection to submission of an instruction on the serious injury element of the offense. He also contends the court erred in giving the jury a supplemental instruction in his absence. We find no reversible error and therefore affirm the trial court.

The State's evidence was that the offense occurred during the evening of November 12, 1979. The victim was in her Cedar Rapids home with her two small children. The jury could find that defendant broke into the home, held a knife to the victim's neck, threatened to kill the sleeping children if she resisted him, placed her on the floor and taped her hands behind her back. Next he gagged her and taped a covering over her head. He removed most of her clothing, using the knife to cut off the bottom of her nightshirt. He then struck her and engaged in various acts of sex abuse, including placing his penis in her rectum and putting his fist in her vagina. She described the vaginal pain as more severe than the pain of childbirth. When she attempted to cry out, defendant again threatened the lives of the children. When defendant finished he asked the victim if she had any drugs. When she said she did not, he kicked her in the side of the head. He then stole money from her purse and left.

Approximately six weeks later, the police interrogated defendant about his possible involvement in a homicide case and other offenses. Before the second day of interrogation, the officers noticed a shiny white tape on the shift knob of defendant's automobile. One of them remembered that similar tape had been used to bind the victim in this case. The victim was brought to the police station where she was shown a group of 52 photographs including defendant's. She identified defendant as her assailant from these photographs.

Subsequently the officers shifted their interrogation of defendant to his possible involvement in the sexual abuse offense. He allegedly made incriminating oral admissions. He was then charged, tried and convicted of the present offense. This appeal followed.

I. *The motion to suppress.* Defendant contends the trial court erred in overruling his pretrial motion to suppress the alleged inculpatory oral statements made to two police officers during custodial interrogation. This contention presents the familiar problem of determining whether to accept the officers' version of the circumstances or defendant's version. Reviewing the evidence de novo, we find the State proved by a preponderance of evidence that the defendant made a voluntary and intelligent waiver of his *Miranda* rights and made the statements to which the officers testified. This makes it unnecessary to interpret language used by the trial court in its ruling which defendant argues is inconsistent with that court's holding.

Our task in reviewing this issue would have been simplified if the officers had, as suggested by defense counsel, taken the precaution of recording the interrogation.

II. *Evidentiary rulings.* In response to a defense motion in limine, the trial court admonished the State not to offer evidence informing the jury the defendant was a

suspect in a homicide case or any specific case. Nor was the jury to be told he admitted other crimes during the interrogation. However, the court ruled the jury could be informed that defendant was being interrogated in connection with the investigation of another case when he made the alleged admissions relevant to this case.

General principles governing motions in limine are delineated in *Twyford v. Weber*, 220 N.W.2d 919, 922–24 (Iowa 1974). We will assume, for purposes of this decision, that the record at trial remained the same as when the pretrial motion was sustained. Under that assumption, it was not necessary for defendant to make a further record at trial. The issue is simply whether evidence was received in violation of the pretrial ruling. *Id.* at 923–24. Of course, to the extent the motion was overruled, the pretrial ruling merely alerted the trial court to evidentiary problems which might occur at trial. When a motion in limine is overruled, it does not excuse the movant from lodging proper objections when the evidence is offered. *See State v. Jensen*, 216 N.W.2d 369, 373 (Iowa 1974).

■ At trial, the State introduced evidence, without defense objection, that defendant was interrogated about other crimes which he denied committing. Assuming this testimony might have been objectionable, it was nevertheless not a violation of the ruling on the motion in limine. The ruling barred testimony concerning other crimes which defendant admitted but did not preclude testimony that defendant denied other crimes.

■ At another point an officer testified to finding a list of female names in defendant's room. After the answer was in the record, defense counsel objected to the testimony on grounds of relevancy and breach of the ruling in limine. The Court sustained the objection on relevancy grounds, but no motion to strike was made. Subsequently the State offered the list in evidence, and no objection was made. Assuming the relevancy objection was good, we find that no violation of the pretrial ruling occurred and no reversible error has been shown.

■ Subsequently, during cross-examination, the prosecutor asked defendant about drinking and drug usage. No objection was made until defendant was asked, "Didn't you have a drug problem?" An objection to this question was sustained. Defendant contends the line of inquiry violated the pretrial ruling as "an attempt to raise the subject matter of defendant's prior drug conviction and to adduce evidence of other crimes." Again, the inquiry may have been objectionable, but it did not violate the in limine ruling. It did not call for testimony concerning convictions of crime.

■ The remaining incident cited by defendant involves rebuttal testimony by one of the officers who interrogated him. On cross-examination, defendant was asked why he thought the police would perjure themselves in their testimony about the interrogation. Defendant responded that one of the officers said, "I don't care what it takes to do, I'm going to get you even if I have to frame you." The officer was permitted, over defense objections based on relevancy, prejudice, other crimes, and collateral impeachment grounds, to testify that defendant was a suspect in another crime and that the officer had emphatically accused defendant of that offense but did not threaten to frame him. This testimony did not violate the pretrial ruling. The trial court had authorized the State to show defendant was being interrogated in connection with the investigation of a different crime. The rebuttal evidence was plainly relevant, and the trial court did not abuse its discretion in refusing to exclude it as prejudicial. Because the evidence was admissible independent of the contradiction to show the circumstances of the interrogation, it was not collateral. *See State v. Hilleshiem*, 305 N.W.2d 710, 713 (Iowa 1981).

Thus we do not find any violation of the ruling on the motion in limine. Nor do we find any reversible error in the court's rulings on defendant's objections at trial to alleged evidence of other crimes.

■■ Defendant also contends the trial court erred in admitting two exhibits into evidence. One was a partial roll of adhesive tape which was found in his car. The tape was a common type, but it was also like the tape which had been used to bind the victim in this case. No objection was made to the exhibit, and therefore no issue was preserved for appeal. *State v. Mark*, 286 N.W.2d 396, 414 (Iowa 1979). The other exhibit was a piece of cloth which had been fastened by the same kind of tape to the gearshift of defendant's car. The trial court overruled a relevancy objection to this exhibit. We believe the trial court reasonably could conclude this evidence had probative value on the issue of defendant's involvement in the offense. Thus it was not an abuse of discretion for the court to admit the exhibit. *See State v. Ball*, 262 N.W.2d 278, 279 (Iowa 1978). In addition, because the roll of tape was already in evidence without objection, it is difficult to see how defendant could have been harmed by the court's ruling.

III. *Sufficiency of the evidence of serious injury.* Under section 709.2 a person commits first-degree sexual abuse "when in the course of committing sexual abuse the person causes another serious injury." The offense is a class "A" felony which carries a mandatory life sentence. "Serious injury" has a technical meaning. It is defined in section 702.18 as "disabling mental illness, or bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

The State's evidence included testimony by the victim that she thought the sexual abuse involved penetration of her vagina by defendant's fist, that it was very painful, and that when she was examined at the hospital after the incident she had uterine or vaginal bleeding, a bruise on her chest, and marks on her neck and wrists. She was not hospitalized, and the injuries healed. She testified that subsequent to the incident she suffered from much more severe cramps on the onset of menstruation than she previously had experienced. She said

the cramps sometimes caused her to double over in pain. In April 1980, five months after the attack, she consulted a gynecologist. At the trial the gynecologist testified for the State that the victim gave him a history of severe cramping and menstrual irregularity dating from the assault. He said he found no evidence of physical damage to account for the victim's symptoms. Based on the history, he attributed the symptoms to emotional trauma suffered in the sexual attack.

By motions for acquittal and objections to the court's instructions, defendant challenged the sufficiency of the evidence to submit the serious injury element of first-degree sexual abuse. Although the State contends otherwise, we believe error was preserved.

■ Four possible kinds of serious injury are included in the section 702.18 definition: (1) disabling mental illness, (2) bodily injury which creates a substantial risk of death, (3) bodily injury which causes serious permanent disfigurement, and (4) bodily injury which causes protracted loss or impairment of the function of any bodily member or organ. Except for the disabling mental illness basis, this definition is identical to the definition of "serious bodily injury" in Model Penal Code section 210.0(3). *See Model Penal Code and Commentaries* § 210.0(3) (1980).

We will assume, without deciding, that the only kind of serious injury at issue in the present case is the fourth kind, bodily injury which causes protracted loss or impairment of the function of any bodily member or organ. This basis was also involved in *State v. Welton*, 300 N.W.2d 157 (Iowa 1981). In that case we adopted dictionary definitions of "protracted," "member," and "organ." "Protracted" means " 'to draw out or lengthen in time or space.' " *Id.* at 160. "Member" means " 'bodily part or organ,' " and "organ" means " 'a differentiated structure (as a heart, kidney, leaf, flower) . . . made up of various cells and tissues and adapted for performance of some specific function . . . .' " *Id.* at 161.

■ In this case, the victim's menstrual cramping and irregularity had persisted for approximately five months. The jury could thus find it was protracted. Moreover, the medical evidence established that menstruation is a function of the reproductive system which includes several organs. We do not believe the legislature intended, as defendant contends, to limit serious injury to situations where the function of only one organ is impaired. It is sufficient if the function of a single organ is impaired, but the element is equally established if the function of a group of organs is harmed. Thus an impairment of the menstrual function would be an impairment of the function of an organ.

■ We recognized in *Welton* that not every harm is an impairment of function within the meaning of the statute. However, a harm which substantially interferes with an organ's function meets the statutory test. *Id.* at 161. *Cf. State v. Anderson*, 308 N.W.2d 42, 46–47 (Iowa 1981) ("substantial" means real, important, not illusive). An impairment, according to common usage, includes any deviation from normal health. *Doe v. Harris*, 495 F.Supp. 1161, 1168–69 (S.D.N.Y.1980). The term means: "To weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in any injurious manner." *Black's Law Dictionary* 677 (5th ed. 1979). Thus a harm which makes the function of an organ intensely painful or irregular is an impairment. The jury could find that chronic menstrual irregularity and cramping of sufficient severity to cause a woman to double up in pain and to seek medical treatment is substantial enough to be an "impairment" as the term is used in the statute.

The remaining issue is whether the evidence was sufficient for a jury question to exist on whether the impairment was caused by "bodily injury." In asserting the evidence was insufficient, defendant relies on the medical testimony attributing the menstrual problems to emotional trauma rather than physical damage incurred in the assault. No doubt exists, however, that the

jury could find the emotional trauma was itself caused in part by the intense pain of the brutal attack. The doctor testified that the intensity of pain and the extent of emotional trauma are related:

Q. Would [it] make a difference how quickly the penetration occurred? A. Sure, no question about that. Obviously it's going to be least painful and least traumatic if it's gradually, if there is a lubricant of some kind used.

The jury could find from the victim's testimony that she suffered great pain and shock when defendant penetrated her vagina with his fist.

The Model Penal Code defines bodily injury as "physical pain, illness or any impairment of physical condition." *Model Penal Code and Commentaries* § 210.0(2). However, our legislature did not define the term in section 702.18. By not adopting the Model Penal Code definition of bodily injury, it might seem that our legislature intended the term to have a different meaning. Because the term is not defined in the statute and does not have a peculiar meaning in law, we must construe it according to the context and approved usage of the language. § 4.1(2); *Welton*, 300 N.W.2d at 160.

■ Bodily injury ordinarily "refers only to injury to the body, or to sickness or disease contracted by the injured as a result of injury." *Black's Law Dictionary* 159. Injury includes "an act that damages, harms, or hurts: an unjust or undeserved infliction of suffering or harm ... hurt, damage, or loss sustained ...." *Webster's Third New International Dictionary* 1164 (1976). Thus the ordinary dictionary definition of bodily injury coincides with the Model Penal Code definition of the term. Because the Model Penal Code definition fits the context of section 702.18, we adopt it.

■ We also approve the Model Penal Code discussion of the concept of serious bodily injury in sexual abuse cases:

This description covers the case of brutal and violent attack involving not only sex-

ual indignity but also grave injury or risk of death. The image of this situation dominates the public perception of rape and accounts for the extreme severity of sanctions authorized for the crime.

*Model Penal Code and Commentaries* § 213.1 at 307–08.

Accordingly, if the victim's emotional trauma was attributable solely to the repulsiveness and indignity of sexual abuse, it was not caused by bodily injury. *Cf. Id.,* § 211.1 at 188 (". . . [T]he definition of 'bodily injury' . . . excludes from liability under the assault offense wrongs based solely upon insult or emotional trauma."). However, if the emotional trauma was attributable in substantial part to physical pain, illness or other impairment of physical condition inflicted in the attack, the jury could find the trauma was caused by bodily injury. Because substantial evidence of a brutal attack in which physical pain was inflicted was adduced in this case, a jury question on the bodily injury issue existed.

We recognize that forcible sexual abuse will frequently cause pain or other injury. It has been held, for example, that forcible rape is bodily injury as a matter of law. *See State v. Adams,* 218 Kan. 495, 545 P.2d 1134 (1976). Yet, under our statutes, forcible sexual abuse alone will not enhance the offense to the first degree. A forcible sex act is an element of sexual abuse in the third degree under section 709.4(1) and of sexual abuse in the second degree under section 709.3(3). For the offense to be enhanced to sexual abuse in the first degree, the additional components of serious injury must be established. That is, the bodily injury must be shown to have created a substantial risk of death, or caused permanent disfigurement, or caused protracted loss or impairment of the function of any bodily member or organ. We believe a sufficient showing was made for submission of this issue to the jury in the present case.

In sum, the jury could find the victim suffered bodily injury which produced emotional trauma, in turn causing protracted loss or impairment of the function of a bodily member or organ. Therefore we hold that the court did not err in submitting the serious injury element of first-degree sexual abuse.

Defendant urges a subsidiary contention on this issue. He contends that even if the evidence was sufficient to submit the fourth basis for serious injury, it was not sufficient to submit the other three. The record shows, however, that he did not object to the court's instruction in which the entire statutory definition of serious injury was given. The court did not specify the ground of serious injury on which the State relied, but defendant did not object to this omission. He objected only to an instruction requested by the State in which disabling mental illness would have been defined in accordance with II Iowa State Bar Association *Uniform Jury Instructions* (Criminal) No. 219. The court refused the State's request. Defendant cannot predicate error on that ruling.

Defendant otherwise preserved error only on the issue of whether the serious injury element should be submitted at all. He did not object to the manner in which the element was submitted. Therefore he did not preserve error on his present subsidiary contention.

IV. *Instructing the jury in defendant's absence.* During jury deliberations, the jury directed a question to the court asking for a definition of protracted injury. The court gave the jury an additional instruction including dictionary definitions of "protract" and "prolong." The record does not show that defendant and his attorney had notice or were present when the instruction was given.

We recently dealt with the general problem of judge-juror communications in *State v. Dreessen,* 305 N.W.2d 438 (Iowa 1981). Under Iowa R.Crim.P. 18(7)(g), the procedures involved in giving additional instructions must take place in the presence of defendant and his attorney, unless such presence is waived. Defendant's right to be present is derived from the sixth amendment. The right is implemented in rule 25. *See State v. Anderson,* 308 N.W.2d 42, 49

(Iowa 1981). Reversal is required when the right is violated unless the error is harmless. *Dreessen*, 305 N.W.2d at 440.

In this case the additional instruction concerned a vital issue in the case. However, defendant does not explain his failure to object to the procedure or communication by motion for new trial.

 Except as otherwise provided in the Rules of Criminal Procedure, the rules relating to the instruction of juries in civil cases are applicable in criminal cases. Iowa R.Crim.P. 18(7)(f). Under Iowa R.Civ.P. 196, all objections to jury instructions must be made in the trial court. One opportunity occurs when the court gives counsel the instructions in final form. An additional opportunity occurs if the court thereafter revises or adds to the instructions. In that situation, rule 196 provides: "But if the court thereafter revises or adds to the instructions, similar specific objection to the revision or addition may be made in the motion for new trial, and if not so made shall be deemed waived." In light of this rule, defendant was obliged to complain of the instruction by motion for new trial or satisfactorily explain his failure to do so. *Maier v. Illinois Central Railroad*, 234 N.W.2d 388, 395–96 (Iowa 1975).

We conclude that defendant waived any objection to the substance of the court's instruction. Assuming he nevertheless did not waive his right to object to the fact of the communication, we find any error in giving the instruction in his absence was harmless beyond a reasonable doubt. The definitions given by the court were substantially the same as the definition of "protracted" approved by this court subsequently in *Welton*, 300 N.W.2d at 160. Furthermore, the definitions were substantially the same as the definition of "protracted loss or impairment" given in the court's original instructions, to which defendant did not object. We cannot reasonably assume the communication would have been different if defendant had been present. *See Dreessen*, 305 N.W.2d at 441. We admonish trial courts, however, to make a record of compliance with Iowa R.Crim.P.

18(7)(g) when additional instructions are given.

No basis for reversal has been demonstrated in any of defendant's contentions.

AFFIRMED.