# IN THE COURT OF APPEALS OF IOWA

No. 23-1780
Filed October 30, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SAMUEL GURISHO KABO,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Jasper County, William A. Price, Judge.

Samuel Gurisho Kabo appeals from his conviction for eluding. **AFFIRMED.**

John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**CHICCHELLY, Judge.**

Samuel Gurisho Kabo appeals his conviction after a jury found him guilty of eluding. Because the court did not err in its jury instructions ruling and substantial evidence supports Kabo's conviction, we affirm.

## I. Background Facts and Proceedings.

On August 28, 2022, Sergeant Tracy Cox of the Jasper County Sheriff's Office observed a vehicle driving eighty-six miles per hour in a sixty-five-mile-per-hour zone. Cox followed the speeding driver in a marked law enforcement vehicle and initiated his emergency lights. When the vehicle did not stop, Cox also initiated his sirens and asked dispatch for assistance. Deputies from Marshall County Sheriff's Office joined the chase, also in marked law enforcement vehicles and with their emergency lights on. The vehicle eventually did stop twice. Both times, several officers from both Jasper and Marshall Counties exited their vehicles, drew their firearms, and commanded the driver to exit the vehicle in accordance with their training. Both times, the driver took off.

After several miles, Cox performed a successful PIT maneuver.[1] Again, several officers exited their vehicles, drew their firearms, and made verbal commands to the driver to exit the vehicle and get on the ground. Notwithstanding being held at gunpoint, the driver did not respond to the officers' instructions. Instead, he walked around to the rear of his vehicle to check for damage. A

---

[1] We have previously described a PIT maneuver or "Precision Intervention Technique" as "a driving technique used by police officers that is designed to halt a fleeing motorist by hitting his or her car at a specific point to throw the car into a spin and brings it to a stop." *State v. Shears*, No. 16-1665, 2017 WL 6034626, at *3 n.2 (Iowa Ct. App. Dec. 6, 2017) (Tabor, J., dissenting).

Marshall County deputy deployed a taser on the driver, and the officers arrested him.

The State charged the driver, who was later identified as Kabo, with eluding–willful failure to stop for law enforcement. At trial, the State presented video evidence of the chase and corroborating testimony from Cox. Kabo testified in his own defense through an interpreter.[2] He stated that while the video "depicted what occurred that evening," he did not understand what was happening. He maintained he was not speeding and did not know police were following him despite the close proximity. He further claimed that when he pulled over both times, the officers commanded him to go.

Before the case was submitted to the jury, Kabo proposed a substitute willfulness instruction, which the district court denied. The jury found Kabo guilty of eluding. He appeals.

## II. Jury Instructions.

Kabo challenges the jury instructions, arguing his preferred "willfulness" instruction should have been given to prevent prejudice. "We generally review a district court's refusal to give a requested jury instruction for errors at law." *State v. Davis*, 975 N.W.2d 1, 8 (Iowa 2022) (citation omitted). To support his position, Kabo generally argues the disputed instruction was prejudicial because it is not a uniform instruction approved by the Iowa State Bar Association Uniform Jury Instruction committee and was "too far removed" from the accompanying

---

[2] Kabo is a refugee from Ethiopia and speaks no English.

general-intent instruction.[3]   He also claims the court erred by relying on unpublished authorities in its ruling.

First, Kabo concedes that the trial court is not required to use uniform jury instructions.  *See id.* at 9–10 (not requiring courts to abide by a particular "model or form in formulating instructions" (citation omitted)).  Therefore, his claim that the instructions were required to expressly include specific uniform language is incorrect.  And his claim that we must then presume prejudice lacks supporting authority.[4]  But even if we did find a presumption of prejudice, this can be overcome by the overwhelming evidence against Kabo, which we address as part of the sufficiency of the evidence.  *See State v. Kraai*, 969 N.W.2d 487, 497 (Iowa 2022) (overcoming a presumption of prejudice "when the jury received 'strong evidence' of a defendant's guilt" (citation omitted)).

Second, Kabo argues that the jury instructions were somehow improper because they were "too far removed."  Specifically, he questions the jury's ability to read Instruction No. 13 regarding general intent, move onto the marshalling instruction at No. 14, and then apply the general intent instruction to the definition of "willfulness" in No. 15.  But "we presume juries follow instructions."  *State v.*

---

[3] He also contends that because the court did not include specific language, the court effectively "direct[ed] a verdict for the State on the question of willfulness." But he does not expand on this argument.  *See* Iowa R. App. P. 6.903(2)(a)(8)(3) (waiving issues inadequately argued on appeal).  Further, the case he cites in support of this proposition, *State v. Gordon*, is inapposite.  *See* 560 N.W.2d 4, 6 (Iowa 1997) (analyzing definitions of "bodily injury" in the Model Penal Code).

[4] Kabo actually does cite an authority for this assertion, but it does not exist.  The case name does not match its given citation, and in any case, he provides limited analysis.  *See* Iowa R. App. P. 6.904(2)(a) (requiring parties to cite cases using "a Bluebook-type citation"), 6.903(2)(a)(8)(3) (waiving issues that fail to cite supporting authority).

*Hanes*, 790 N.W.2d 545, 552 (Iowa 2010). Further, "[w]e consider the jury instructions as a whole rather than in isolation to determine whether they correctly state the law." *Davis*, 975 N.W.2d at 8 (citation omitted). "Read together, the jurors were informed that to convict [Kabo], they were required to find he was consciously aware of the officer's signals to stop and that his failure to stop was voluntary, and not by mistake or accident."[5] *State v. Tubbs*, No. 10-0758, 2011 WL 768756, at *3 (Iowa Ct. App. Mar. 7, 2011). These instructions were neither conflicting nor confusing to the jury. *Compare id.* (finding the above instructions "sufficient" because they adequately instruct on general intent), *with State v. Benson*, 919 N.W.2d 237, 245 (Iowa 2018) (including conflicting intent instructions "render[s] the instructions confusing and misleading").

Finally, Kabo relies on our appellate rules to argue that the court erred because it relied on an unpublished decision. *See* Iowa R. App. P. 6.904(2)(a)(2) (noting that unpublished decisions are not binding but provide "persuasive reasoning"). But unpublished decisions are still persuasive authority, and Kabo fails to explain how this is error. In this particular case, *Tubbs* is highly persuasive given the disputed jury instructions are nearly identical. *See Tubbs*, 2011 WL 768756, at *3; *see also Evans v. State*, No. 24-0292, 2024 WL 4370633, at *3 (Iowa Ct. App. Oct. 2, 2024) (finding unpublished authority highly persuasive when it "presents a nearly identical fact pattern"). We therefore find Kabo's

---

[5] Instruction No. 13 says in part, "While it is not necessary that a person knows the act is against the law, it is necessary that the person was aware he was doing the act and he did it voluntarily, not by mistake or accident." Instruction No. 15 says in part, "'Willfully,' in this case means a conscious awareness by Mr. Kabo of the peace officer's visual or audible signal to stop and Mr. Kabo's response thereto."

arguments regarding the jury instructions without merit and affirm the court's exclusion of his proposed instruction.

### III. Sufficiency of the Evidence.

Kabo then claims we must reverse his conviction because there was insufficient evidence. We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). "In conducting that review, we are highly deferential to the jury's verdict," viewing the evidence in the light most favorable to the State and upholding the verdict if supported by substantial evidence. *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* For the jury to find Kabo guilty of eluding, the State had to prove:

> 1. On or about August 28, 2022 Mr. Kabo was the driver of a motor vehicle
> 2. A peace officer driving a marked or unmarked law enforcement vehicle gave Mr. Kabo a visual (flashing red and blue lights) and audible (siren) signal to stop.
> 3. Mr. Kabo willfully failed to bring the motor vehicle he was driving to a stop or otherwise willfully eluded or attempted to elude the pursuing law enforcement vehicle, after being given a visual and audible signal to stop.

Kabo concedes that the evidence "overwhelmingly establish[es] the first two elements." Instead, he only challenges the third element of willfulness.

Kabo maintains that he did not know police were behind him, he was not speeding, and on both occasions that he pulled over, an officer told him to go; therefore he did not possess the requisite intent of "willfulness" for eluding. But all of these claims, in essence, are challenges to the jury's credibility determination. It is not our role on appeal "to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the

jury." *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005) (citation omitted). Instead, "we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Crawford*, 972 N.W.2d at 202 (quoting *Williams*, 695 N.W.2d at 27). The State here offered overwhelming evidence that conflicted with Kabo's claims, including two separate videos and officer testimony. The jury was tasked with reconciling such inconsistencies and making its determination, which we ordinarily will not disturb. *See Williams*, 695 N.W.2d at 28. The record evidence showed Kabo's ability to stop for law enforcement and his failure to do so; accordingly, we find there is substantial evidence to support Kabo's conviction for eluding.

## IV.    Disposition.

Because the court did not err in its jury-instructions ruling and substantial evidence supports Kabo's conviction, we affirm.

**AFFIRMED.**